AO 91 (Rev. 11/11) Criminal Complaint     AUSA Hayley Altabef (312) 353-5357

**FILED**
12/1/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABEL ARAUJO BISOSO and<br>RODOLFO OCAMPO CIPRES | CASE NUMBER: 25CR765 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about December 1, 2025, in the Northern District of Illinois, Eastern Division, the defendants violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | did knowingly and intentionally possess with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

*Tyler S. Kazee*
TYLER KAZEE
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: December 1, 2025

*Jeannice W. Appenteng*
*Judge's signature*

City and state: Chicago, Illinois

Jeannice W. Appenteng, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, TYLER KAZEE, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for 13 years. My current responsibilities include the investigation of narcotics trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that ABEL ARAUJO BISOSO and RODOLFO OCAMPO CIPRES have violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ARAUJO BISOSO and OCAMPO CIPRES with possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and a confidential source, my review of certain photographs and video and audio recordings, and my training and experience.

4. The summaries of recorded conversations in this affidavit do not include reference to all the topics covered during the conversations or all statements made by

the speakers on the topics that are described. In certain of the paragraphs describing conversations set forth below, interpretations of the discussion are included in brackets. These interpretations include meanings attributed to code words, coded language, and vague references used by the speakers. My understanding and interpretation of the conversations is based upon the contents of the conversations, the context of both prior and subsequent intercepted conversations, my knowledge derived from this investigation, my training and experience, and the training and experience of other law enforcement agents. All the communications referenced in this affidavit were in Spanish and have been translated for the purpose of this affidavit by a fluent Spanish speaker. These translations are approximate and are in draft form.

## FACTS SUPPORTING PROBABLE CAUSE

5. In or around October 2020, the FBI and Drug Enforcement Administration ("DEA") received information from a confidential source ("CS")[1] that ABEL ARAUJO BISOSO and members of his Drug Trafficking Organization ("DTO") were trafficking and distributing controlled substances, namely cocaine, fentanyl,

---

[1] The CS has prior convictions for illegal entry into the United States, forgery, and traffic violations, as well as an arrest for possession of narcotics. The CS's information has proven reliable and credible and has been corroborated by independent investigation that includes toll records, recorded conversations, physical surveillance, and seizures. Information retrieved by the CS has led to multiple arrests as well as multiple seizures of kilograms of cocaine, heroin, and fentanyl. The CS has also supplied information that led law enforcement to multiple other suppliers in the Chicago area. The CS has agreed to cooperate with law enforcement in hopes of receiving monetary compensation and has been paid approximately $316,570.17 to date. In addition, the CS has asked the FBI for help securing permanent immigration status. The CS has been granted temporary "deferred action" status to allow the CS to remain in the United States while he assists in this investigation. Law enforcement has made no promises to the CS regarding the CS's long-term immigration status.

and crystal methamphetamine, throughout the United States, including the Joliet area.

6. According to the CS, the CS and ARAUJO BISOSO communicate through electronic messages and voice calls using the WhatsApp messaging application. ARAUJO BISOSO uses a WhatsApp account number ending in -1702 (the "-1702 number"). Law enforcement has preserved the electronic messages between the CS and ARAUJO BISOSO, using the -0172 number. However, most of the WhatsApp voice calls between the CS and ARAUJO BISOSO, using the -0172 number, are not recorded.

7. According to the CS, in or around November 2025, in a series of WhatsApp communications, ARAUJO BISOSO offered to sell the CS over 100 pounds of crystal methamphetamine from a supplier in Mexico.

8. On or about Sunday, November 23, 2025, ARAUJO BISOSO, using the -0172 number, sent the CS a WhatsApp message indicating that "the order" would be ready on Thursday or Friday. Based on my training and experience, the training and experience of my colleagues, and the investigation to date, I believe that "the order" referred to the approximately 100 pounds of methamphetamine ARAUJO BISOSO offered to sell the CS. In subsequent WhatsApp conversations between the CS and ARAUJO BISOSO, who was using the using the -0172 number, the two agreed to push the suspected narcotics delivery to a later date.

9. On or about Sunday, November 30, 2025, at approximately 4:53 p.m., the CS sent ARAUJO BISOSO, who was using the -0172 number, a WhatsApp

3

message asking where he/she should go in the morning for the anticipated narcotics transaction. Approximately two minutes later, ARAUJO BISOSO, using the -0172 number, messaged the CS to plan for "Joliet." Based on my training and experience, the training and experience of my colleagues, and the investigation to date, I believe that ARAUJO BISOSO referred to Joliet, Illinois as site of the planned narcotics transaction between ARAUJO BISOSO and the CS.

10. On or about December 1, 2025, at approximately 6:33 a.m., ARAUJO BISOSO, using the -0172 number, sent the CS a WhatsApp message identifying a residence on the 1300 block of Richmond Street in Joliet. At approximately 7:43 a.m., ARAUJO BISOSO, using the -0172 number, sent the CS a WhatsApp message confirming that he was "here." Based on my training and experience, the training and experience of my colleagues, and the investigation to date, I believe the address ARAUJO BISOSO identified was the approximate location for the narcotics transaction, and that ARAUJO BISOSO confirmed he was at the location at approximately 7:43 a.m.

11. On that day, at approximately 7:45 a.m., law enforcement met the CS at a pre-determined location. After searching the CS for contraband and excess currency and finding nothing, law enforcement provided the CS an audio/video recording device and an audio transmitter.

12. At approximately 8:30 a.m., a law enforcement officer acting in an undercover capacity ("UC") drove the CS to the 1300 block of Richmond Street in an undercover vehicle ("UC Vehicle"). The UC parked the UC Vehicle on the 1300 block

4

of Richmond Street, near where other law enforcement had established surveillance earlier that morning.

13. At approximately 8:39 a.m., law enforcement observed a grey Ford Escape, bearing Illinois License Plate (ILP) FB 20361, pull out of the driveway of a house on Richmond Street. The Ford Escape then parked on the other side of Richmond Street, and an unknown Hispanic male, later identified as OCAMPO CIPRES[2], exited the Ford Escape and walked toward an address on Richmond Street (the "Ocampo Cipres Residence") [3]. According to Illinois Secretary of State Records, the Ford Escape is registered to RODOLFO OCAMPO CIPRES at the Ocampo Cipres Residence.

14. At approximately the same time, surveillance units observed a Hispanic male, later identified as ARAUJO BISOSO,[4] standing in the driveway of the Ocampo Cipres Residence. Law enforcement observed the CS exit the UC Vehicle and walk toward ARAUJO BISOSO.

---

[2] The identification of OCAMPO CIPRES is based on the following: after the arrest, law enforcement recovered from his person two Mexican consular photo identifications with the name RODOLFO OCAMPO CIPRES, and the photograph on the IDs resembled the Hispanic male law enforcement had just arrested.

[3] The address of the Ocampo Cipres Residence is two homes away from the address ARAUJO BISOSO had provided the CS earlier that morning. During his *Mirandiz*-ed post-arrest interview, OCAMPO CIPRES admitted he lived at the Ocampo Cipres Residence.

[4] The identification of ARAUJO BISOSO is based on the following: after the arrest, law enforcement recovered from his person an Illinois state driver's license with the name ABEL ARAUJO BISOSO, and the photograph on the ID resembled the Hispanic male law enforcement had just arrested. In addition, after the arrest, the CS, who has a pre-existing relationship with ARAUJO BISOSO, identified the Hispanic male as ARAUJO BISOSO.

15. As captured in the audio/video recording device worn by the CS, the CS and ARAUJO BISOSO walked toward a blue Mitsubishi sedan parked in the driveway of the Ocampo Cipres Residence.[5] ARAUJO BISOSO asked the CS if the CS wanted to "check it out," and the CS responded, "Yeah at least one to send them a picture that they're here. Where do you have them? In this car?" ARAUJO BISOSO replied: "I have them here." Based on my training and experience, the training and experience of my colleagues, and the investigation to date, I believe ARAUJO BISOSO offered to show the CS a sample of the methamphetamine he intended to sell the CS, which was located inside the blue Mitsubishi.

16. At approximately the same time, as observed by law enforcement and reflected in the audio/video recording device, OCAMPO CIPRES walked toward ARAUJO BISOSO and the CS by the blue Mitsubishi. ARAUJO BISOSO opened the driver's side door of the blue Mitsubishi, and the car alarm went off. In response, as captured in part on the recording device, OCAMPO CIPRES entered the driver's seat of the blue Mitsubishi. As heard on the recording device, the car ignition turned briefly, the alarm stopped, and OCAMPO CIPRES exited the blue Mitsubishi.

17. Shortly thereafter, as reflected on the audio/video recording device, ARAUJO BISOSO leaned into the backseat on the driver's side of the vehicle. The camera angle did not capture ARAUJO BISOSO's movements inside the blue

---

[5] According to Illinois Secretary of State records, the blue Mitsubishi was registered to Individual A and Individual B at an address on Fernwood Drive in Bolingbrook, Illinois. Notably, one of the Mexican consular identification cards found on OCAMPO CIPRES identifies the Fernwood Drive address as OCAMPO CIPRES's address.

6

Mitsubishi, but the audio captured the sound of a zipper opening, a plastic-like material rustling, and a zipper closing. ARAUJO BUSOSO then exited the blue Mitsubishi and closed the driver's side door. Below is a picture of the interior driver's side of the blue Mitsubishi showing the position of the bags in the backseat of the vehicle:



18. According to the CS, ARAUJO BISOSO, while leaning inside the blue Mitsubishi, opened a suitcase in the back seat, took out a clear plastic baggie, and then shut the car door.

19. The CS, ARAUJO BISOSO, and OCAMPO CIPRES then together walked into the garage of the Ocampo Cipres Residence through a side door. According to the CS, once inside the garage, ARAUJO BISOSO placed the plastic bag taken from inside the blue Mitsubishi on a concrete block for the CS to examine. The

camera angle of the CS's recording device did not capture the plastic bag in ARAUJO BISOSO's hands, but it did show ARAUJO BISOSO looking down toward his hands, as if manipulating something, at the same time the audio captured a plastic-like material rustling. As captured on the recording device, ARAUJO BISOSO described the contents of the bag as "badass." ARAUJO BISOSO added that the delivery contained about "5 kilos more" than ARAUJO BISOSO and the CS had discussed. According to the CS, OCAMPO CIPRES was present in the garage for the conversation.

20. Shortly thereafter, as reflected in the recording, the CS called the UC, who was posing as the CS's associate, to inform the UC that "they're [the drugs were] good." According to the CS, OCAMPO CIPRES was also present in the garage for this call.

21. At approximately 8:45 a.m., law enforcement announced themselves and approached the Ocampo Cipres Residence to effect an arrest. As law enforcement moved in, OCAMPO CIPRES and ARAUJO BISOSO fled on foot, climbing over the fence of the Ocampo Cipres Residence. The CS's video recording device did not capture OCAMPO CIPRES and ARAUJO BISOSO's flight, but approximately three officers observed their flight.

22. At approximately 8:48 a.m., law enforcement located and arrested ARAUJO BISOSO in the backyard of a residence on John Street, approximately one block from the Ocampo Cipres Residence.

23. Approximately twenty minutes later, law enforcement arrested OCAMPO CIPRES on the sidewalk in front of a residence on Jefferson Street, approximately two blocks away from the Ocampo Cipres Residence.

24. After arresting OCAMPO CIPRES and ARAUJO BISOSO, law enforcement seized from the garage the clear plastic bag containing off-white crystalline-like substance that ARAUJO BISOSO retrieved from the blue Mitsubishi for the CS to inspect.

25. Law enforcement also searched the blue Mitsubishi. In the back seat of the blue Mitsubishi, law enforcement found a black suitcase, a blue duffle bag, a black and grey duffle bag, and a large pink reusable shopping bag. Law enforcement opened all four of the bags. Inside were approximately 118 clear plastic bags—similar in size, shape, and contents to the bag found in the garage—containing an off-white crystalline-like substance, a sample of which field tested positive for the presence of methamphetamine. In total, the clear plastic bags weighed approximately 68.9301 kilograms gross package weight.

26. Both ARAUJO BISOSO and OCAMPO CIPRES were transported to the Chicago Division of the Federal Bureau of Investigation, 2111 West Roosevelt, Chicago, Illinois, for interview and processing.

27. At 2111 West Roosevelt, law enforcement read OCAMPO CIPRES his *Miranda* rights in Spanish, and OCAMPO CIPRES agreed to speak with law enforcement. During OCAMPO CIPRES's video and audio recorded interview (also conducted in Spanish), OCAMPO CIPRES admitted that he lived at the Ocampo

Cipres Residence. He also said ARAUJO BISOSO had asked OCAMPO CIPRES for a favor: to use the Ocampo Cipres Residence for a meeting. Shortly after providing that information, OCAMPO CIPRES asked for an attorney. At that time, law enforcement terminated the interview.

28. ARAUJO BISOSO declined to speak with law enforcement.

## CONCLUSION

29. Based on the foregoing, there is probable cause to believe that on or about December 1, 2025, ABEL ARAUJO BISOSO and RODOLFO OCAMPO CIPRES knowingly and intentionally possessed with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

_Tyler S. Kazee_
TYLER KAZEE
Special Agent, Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone December 1, 2025.

_Jeannice W. Appenteng_
Honorable Jeannice W. Appenteng
United States Magistrate Judge

10